# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Case No. CR407-284 |
| | ) | |
| KENT ALLEN CRAWFORD, | ) | |
| | ) | |
| Defendant. | ) | |

## **REPORT AND RECOMMENDATION**

On September 17, 2007, the Court ordered a forensic psychological examination of defendant to determine whether he is competent to stand trial and whether he was insane at the time of the alleged offense. (Doc. 11.) Defendant was transported to the Federal Detention Center in Miami, Florida. He was evaluated by Lisa B. Feldman, Psy. D., who opined that defendant is incompetent to stand trial. The Court conducted a competency hearing on February 21, 2008 in Savannah, Georgia. The government introduced the testimony of Dr. Feldman, who explained her findings and diagnosis. Defendant contests Dr. Feldman's evaluation, arguing that he is competent to stand trial.

## I. HISTORY OF MENTAL HEALTH PROBLEMS[1]

Defendant has an extensive history of mental health treatment beginning at the age of sixteen, when he was hospitalized due to an antihistamine overdose. During the hospitalization, he was given a diagnosis of paranoid schizophrenia. Between the ages of nineteen and thirty-two he underwent approximately ten to twelve psychiatric inpatient hospital admissions. Following a one-year period of hospitalization ending in 1984, defendant barricaded himself in a room with a gun to his head, resulting in a five hour police standoff.

In 1993, defendant was charged and convicted in this Court of mailing threatening communications to two Savannah doctors. United States v. Crawford, No. 493cr043 (S.D. Ga., filed Nov. 18, 1993). In 1991, he approached Dr. Funderburk, a urologist in Savannah, Georgia, about pain in his groin. As treatment for this condition, defendant requested that his genitals be removed. Dr. Funderburk, finding nothing physically wrong with defendant, refused to perform the surgery and referred defendant to

---

[1] This history is drawn from the testimony of Dr. Feldman, her report of forensic evaluation (Doc. 13), and certain of defendant's letters to the Court and the United States Attorney's Office which were introduced as exhibits at the hearing.

a psychiatrist. Shortly thereafter, defendant began mailing and phoning threats to Funderburk's home, office, and family. He similarly threatened Dr. Bancato, a Savannah area dentist.

Although defendant was found competent to stand trial for that case, his evaluating psychologist, Dr. Scott Duncan, Psy. D., diagnosed defendant with polysubstance dependance (in remission), major depression with obsessive-compulsive traits, hypochondriasis, passive aggressive personality disorder, and antisocial personality disorder.

Defendant was tried and convicted. He was sentenced to sixty months of imprisonment. Soon after defendant began serving his sentence, a noted deterioration in his mental condition and behavior resulted in his transfer from the Federal Correctional Institution in Tallahassee, Florida to the Federal Correctional Institution in Butner, North Carolina. Shortly thereafter, the Eastern District of North Carolina ordered that he be committed to the custody of the Attorney General for hospitalization and treatment in a suitable facility until he no longer required treatment or until his sentence expired. United States v. Crawford, No. 5:94hc331 (E.D.N.C. June 9, 1994).

At FCI Butner, defendant was diagnosed as suffering from schizophrenia, undifferentiated type; depressive disorder; polysubstance abuse; and borderline personality disorder. He was placed on suicide watch approximately eighteen times during his stay at Butner. After a suicide attempt in April of 1995, defendant was reportedly preoccupied with the delusion that he was imprisoned for his religious affiliation with the Seventh Day Adventists. He reported to the examiners that the government incarcerates everyone who refuses to worship on Sundays.

Upon completion of his sentence, defendant was civilly committed pursuant to 18 U.S.C. § 4246, as it was determined that his release would pose an unacceptable risk to the community. Consequently, he was transferred to the United States Medical Facility for federal prisoners in Springfield, Missouri, where he was diagnosed with schizophrenia and borderline personality disorder. While in Springfield, defendant became increasingly paranoid and delusional. He believed that the staff members were conspiring against him due to his knowledge of illegal staff behavior. As defendant had consistent difficulties with the staff in the Springfield facility, he was transferred to the Federal Medical Center in Devens,

Massachusetts in 2004.

In Devens, the psychology staff found defendant to be irascible and uncooperative. He refused psychotropic medication. In 2006, defendant once again began verbalizing his belief that staff and other inmates were treating him unfairly due to his religious beliefs. He wrote several letters threatening suicide or the murder of a staff member. In August of 2006, the Risk Assessment Panel at the Devens facility assigned defendant the diagnoses of psychotic disorder, alcohol abuse, cocaine abuse, and borderline personality disorder. They recommended that his commitment be continued because his release would create a substantial risk of injury to others.

On June 4, 2007, a district judge for the Eastern District of North Carolina held a hearing pursuant to 18 U.S.C. § 4247(h).[2] Defendant's treating psychiatrist testified that he did not believe that defendant met the diagnostic criteria for a major mental illness. The Risk Assessment Panel, however, still believed that defendant "continued to meet commitment

---

[2] 18 U.S.C. § 4247(h) permits a hearing on motion so long as it is not filed within 180 days of a court determination that the person should continue to be committed. The hearing is held before the court that ordered the commitment. Id.

criteria and continued to pose a danger to others." (Doc. 13 at 8.) Based upon the evidence presented at the hearing, the district court found that defendant no longer met the criteria for commitment under 18 U.S.C. § 4246 and ordered his release. <u>United States v. Kent Crawford</u>, No. 597hc620 (E.D.N.C. June 6, 2007). Defendant was held in Devens for an additional sixty days so that the authorities could attempt to "find some humanitarian disposition for [him], by way of state placement or otherwise." <u>Id.</u> On August 3, 2007, defendant was released from Devens.

He immediately traveled by bus to Savannah. Within two weeks of his release from Devens, local police admitted him to Memorial Hospital after he once again made terroristic threats against one of the same physicians he targeted in his original federal offense. Memorial Hospital transferred defendant to Georgia Regional Hospital, a psychiatric facility, on August 14, 2007. Upon admission to Georgia Regional Hospital, defendant was diagnosed with schizoaffective/psychosis and major depression.

On August 29, 2007, during his stay at Georgia Regional, defendant contacted the Savannah branch of the Federal Bureau of Investigation by

telephone and claimed that he was going to "blow up" their office. He called the office three times in approximately thirty minutes. During the final call, he told Senior Supervisory Resident Agent Bill Kirkconnell that he made the threats in order to be transferred from the mental health facility, where he was allegedly treated poorly, to a federal prison.

## II. EVALUATION AND HEARING

At the court-ordered psychological evaluation in the Federal Detention Center in Miami, Florida, defendant was argumentative and refused to respond to most questions posed him. He refused to cooperate with any testing. Accordingly, Dr. Feldman spent considerable effort reviewing defendant's history in making her evaluation.

After extensive review of the available records and careful observation of defendant's behavior while at the federal detention center,[3] Dr. Feldman

---

[3] She opined that defendant "displayed signs of active mental illness, with prominent psychotic features." During the time she spent evaluating defendant, he exhibited paranoid ideation and an irritable mood. His thinking appeared to be "tangential and perseverative," and "disorganized." The defendant exhibited an increased intensity and range of emotional expression, and his mood was congruent with his verbalizations. While in his housing unit, he paced back and forth while appearing to mumble to himself. He also acknowledged fixating on certain women since the age of fourteen, indicating his obsessional tendencies.

diagnosed defendant as suffering from schizophrenia, undifferentiated type;[4] polysubstance abuse; and borderline personality disorder. She further stated that he suffered from delusions involving themes of persecution in which he believed that he is being plotted against. For instance, defendant's account of his previous commitment was tainted with paranoid beliefs, including his belief that he was committed because he was homeless.

Dr. Feldman concluded that defendant is in an active state of psychosis that severely impairs his rational understanding of the legal proceedings against him, and it is likely that this mental state will interfere with his ability to assist in his own defense. In her opinion, therefore, he is incompetent to stand trial. (Doc. 13 (Forensic Evaluation).) She further concluded that defendant's mental disorder interfered with his ability to appreciate the nature and quality of the wrongfulness of his actions at the time of the alleged offense. (Id.)

---

[4] Though his symptoms closely fit those of borderline personality disorder, Dr. Feldman concluded that the frequency and intensity of his psychotic episodes suggests that he also suffers from schizophrenia, and the psychosis experienced from the schizophrenia likely exacerbates the underlying borderline personality disorder.

At the hearing, defendant spoke on his own behalf and contested Dr. Feldman's evaluation.[5] In support of his viewpoint, he referenced a series of "confession" letters he sent to the Court over the previous weeks. He also presented a new letter while at the hearing. In the letters, defendant clearly and cogently explained that he made the threatening phone calls to the FBI hoping that he would be arrested and imprisoned in a federal facility in the general population. He wanted out of Georgia Regional. He further stated that he "did understand [his] actions were illegal and carried [the punishment of] imprisonment." (Doc. 17 Ex. 1.)

Dr. Feldman reviewed the letters at the hearing. She testified that though the letters clearly evinced logical and goal-directed thought processes, schizophrenics commonly exhibit this kind of behavior. Although the defendant's letters are well written and coherent, she testified that the letters reveal that his reasoning is influenced by certain underlying delusions. For instance, in one letter defendant asked the Court to "please stop manipulating my case." (Doc. 17 Ex. 2.) Dr. Feldman testified that this statement further evinces defendant's underlying delusion that the

---

[5] Defendant refused to speak to his counsel. He provided counsel with no grounds for objection. Accordingly, counsel did not object to Dr. Feldman's report at the hearing.

9

Court is, in fact, manipulating the case against him.

Defendant also contended that Dr. Riggs, his treating psychiatrist at Devens, correctly concluded that he did not suffer from any major mental illness. Dr. Feldman disagreed with Dr. Riggs' June 2007 determination. She stated that she spoke to and agreed with the members of the Devens' Risk Assessment Panel, who believed that defendant posed too great a risk to the public to be released.

Finally, though defendant was found competent to stand trial in 1993, Dr. Feldman testified that his condition has since deteriorated and that the initial evaluator incorrectly diagnosed him as merely being hypochondriacal. In her opinion, based upon the frequency and intensity of his psychotic symptoms over time, defendant's condition even in 1993 was something more than hypochondriasis, and his present diagnosis of schizophrenia and delusional thought processes renders him incompetent to stand trial.

## III. CONCLUSION

Based upon the largely unrebutted psychological evidence presented

in this case, the Court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or assist properly in his defense. 18 U.S.C. § 4241(d). It is therefore recommended that the defendant be committed to the custody of the Attorney General, who should be directed to hospitalize the defendant "for treatment in a suitable facility for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the trial to proceed." 18 U.S.C. § 4241(d)(1); see United States v. Donofrio, 896 F.2d 1301, 1303 (11th Cir. 1990). As defendant has demonstrated hostility toward the staff at the Federal Detention Center in Miami, the Court should encourage the Bureau of Prisons to hospitalize defendant in another facility pending further study under § 4241(d).

**SO REPORTED AND RECOMMENDED** this 12th day of March, 2008.

UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA